The Honorable Shane Broadway State Representative 201 S.E. 2nd Street Bryant, AR 72022-4025
Dear Representative Bryant:
You have requested an Attorney General opinion concerning the Unfair Cigarette Sales Act [codified at A.C.A. § 4-75-701 et seq.].
As you note in your correspondence, two previously-issued Attorney General opinions (Opinions Nos. 99-098 and 98-266) addressed the issues you have raised. However, as you also note, both of those opinions were based upon certain factual assumptions that were provided by the requestors. You have provided different factual assumptions.
More specifically, you have described two long-standing practices engaged in by cigarette manufacturers and retailers.
The first practice you have described involves the use of "discount coupons." Under a "discount coupons" program, the manufacturers provide members of the general public with discount coupons. The retail customer gives the tobacco retailer the manufacturer's coupon (e.g., $.30), plus cash ($2.20), to total an amount equal to the minimum price per pack of cigarettes ($2.50), as set by the provisions of the Unfair Cigarette Sales Act. The manufacturer then reimburses the retailer the face amount of the "discount coupon," plus related handling costs.
The second practice you have described involves the use of "paperless coupons," or "buydowns." Under a "buydown" program, the cigarette manufacturer agrees to pay (and does pay) the retailer an amount of cash equal to a set amount per pack or per carton for a certain number of the manufacturer's designated brand of cigarettes (e.g., $.30 per pack) then held in the retailer's inventory, if the retailer agrees to sell that number of packs or cartons of the manufacturer's brand to consumers for a designated reduced price that is equal to the amount of the buydowns." The retailer agrees to sell, and does sell, that number of packs of that brand of cigarettes to retail customers at a discounted price (e.g., $2.20 per pack), with the total funds received by the retailer being the minimum price per pack (e.g., $2.50) for the pack of cigarettes, as determined under the provisions of the Unfair Cigarette Sales Act. These "buydowns" are generally referred to as "paperless coupons," and they operate the same way as the cigarette manufacturers' "discount coupons," described above.
Both the "discount coupons" and the "buydowns" have been widespread industry-wide practices for years in Arkansas by all cigarette manufactures, and are generally available to all tobacco retailers who agree to participate. The intent of these practices is to encourage retail consumers to try or to buy the manufacturer's brand of cigarettes. There is no intent on the part of the manufacturers or retailers, by their participation, to injure or destroy competitors or to substantially lessen competition at either the manufacturers' level or the retailers' level.
You have asked me to assume all of the above-stated facts, as well as the fact that none of the exceptions from minimum pricing provided by A.C.A. § 4-75-703 are applicable.
In light of the foregoing, you have asked:
 (1) Is it a violation of the Unfair Cigarette Sales Act for an Arkansas tobacco retailer permit holder to sell cigarettes to a consumer, where the consumer pays for the cigarettes with cash, out of his own pocket, and a paper discount coupon (which, when totaled, would equal the minimum price of the cigarettes set by the provisions of the Unfair Cigarette Sales Act), but where the use of the paper discount coupon reduces the consumer's actual cash price to a level below the minimum price for the pack of cigarettes set by the Unfair Cigarette Sales Act?
 (2) Is it a violation of the Unfair Cigarette Sales Act for an Arkansas tobacco retail permit holder to sell cigarettes to a consumer, where the consumer pays, out of his own pocket, a cash amount less than the minimum price for the pack of cigarettes set by the provisions of the Unfair Cigarette Sales Act, but where the use of a "buydown" or "paperless coupon"; on those cigarettes provides that the tobacco retail permit holder receives total compensation for the sale of the pack of cigarettes that is equal to the minimum price set for such cigarettes by the provisions of the Unfair Cigarette Sales Act?
RESPONSE
Question 1 — Is it a violation of the Unfair Cigarette Sales Act for anArkansas tobacco retailer permit holder to sell cigarettes to aconsumer, where the consumer pays for the cigarettes with cash, out ofhis own pocket, and a paper discount coupon (which, when totaled, wouldequal the minimum price of the cigarettes set by the provisions of theUnfair Cigarette Sales Act), but where the use of the paper discountcoupon reduces the consumer's actual cash price to a level below theminimum price for the pack of cigarettes set by the Unfair CigaretteSales Act?
It is my opinion that the transaction you have described in this question is not a violation of the Unfair Cigarette Sales Act.
The provision of the Unfair Cigarette Sales Act that is primarily applicable to such a scenario is A.C.A. § 4-75-709, which states:
4-75-709. Combination sales.
 In all advertisements, offers for sale, or sales involving two (2) or more items, at least one (1) of which items is cigarettes, at a combined price, and in all advertisements, offers for sale, or sales involving the giving of any gift or concession of any kind, whether coupons or otherwise, the wholesaler's or retailer's combined selling price shall not be below the cost to the wholesaler or the cost to the retailer, respectively, of the total of all articles, products, commodities, gifts, and concessions included in the transactions; but if any such articles, products, commodities, gifts, or concessions shall not be cigarettes, the basic cost thereof shall be determined in the manner provided in 4-75-702(10).
A.C.A. § 4-75-709.
The scenario you have described in your question is a "combination sale" governed by the above-quoted section of the Act.[1] Therefore, in order for the transaction to comply with the Act, the retailer's "combined selling price" must not be below the "cost to the retailer." Although the term "combined selling price" is not defined in the Act, it is clear from the context of its usage that it refers to the total of the amount paid by the consumer plus the amount of the coupon.
The term "cost to the retailer," as used in the above-quoted section, is defined by the Act as follows:
 (12)(A) "Cost to the retailer" means the basic cost of the cigarettes involved to the retailer plus the cost of doing business by the retailer as evidenced by the standards and methods of accounting regularly employed by him and must include, without limitation, labor including salaries of executives and officers, rent, depreciation, selling costs, maintenance of equipment, delivery costs, all types of licenses, taxes, insurance, and advertising.
 (B) In the absence of proof of a lesser or higher cost of doing business by the retailer making the sale, the cost of doing business by the retailer shall be presumed to be six percent (6%) of the basic cost of cigarettes to the retailer.
 (C) In the case of any retail dealer who in connection with the retail dealer's purchase of any cigarettes shall receive not only the discounts ordinarily allowed upon purchases by a retail dealer but also in whole or in part the discounts ordinarily allowed upon purchases by a wholesale dealer, the cost of doing business by the retail dealer with respect to the said cigarettes shall be, in the absence of proof of a lesser or higher cost of doing business by the retail dealer, the sum of the cost of doing business by the retail dealer and, to the extent that he shall have received the full discounts ordinarily allowed to a wholesale dealer, the cost of doing business by a wholesale dealer as defined in subdivision (11)(B) of this section.
A.C.A. § 4-75-702(12).
You have asked me to assume that the combined selling price in the transaction you have described equals the "minimum price of the cigarettes set by the provisions of the Unfair Cigarette Sales Act." In a "combination sale," the minimum allowable price is the "cost to the retailer . . . of the total of all articles, products, commodities, gifts, and concessions included in the transaction." I therefore interpret your question to assume that the combined selling price in the transaction you have described equals the "cost to the retailer . . . of the total of all articles, products, commodities, gifts, and concessions included in the transaction."
Given that assumption, I must conclude that the transaction you have described does not violate the Act.
I note that you specifically made reference to the fact that the amount of cash paid out of the consumer's pocket is lower than the allowed minimum price under the Act. This fact, in my opinion, is not pertinent to the analysis of whether the transaction complies with the Act. Rather, the pertinent inquiry in a combination sale is whether the total of the amount paid by the consumer and the amount of the coupon (or other concession) equals the allowed minimum price.
Question 2 — Is it a violation of the Unfair Cigarette Sales Act for anArkansas tobacco retail permit holder to sell cigarettes to a consumer,where the consumer pays, out of his own pocket, a cash amount less thanthe minimum price for the pack of cigarettes set by the provisions of theUnfair Cigarette Sales Act, but where the use of a "buydown" or"paperless coupon" on those cigarettes provides that the tobacco retailpermit holder receives total compensation for the sale of the pack ofcigarettes that is equal to the minimum price set for such cigarettes bythe provisions of the Unfair Cigarette Sales Act?
It is my opinion that the transaction you have described in this question is not a violation of the Unfair Cigarette Sales Act.
This transaction also constitutes a "combination sale," and is governed by the provisions of A.C.A. § 4-75-709 and the principles discussed in response to Question 1. You have also asked me to apply to same assumptions about the combined selling price in this transaction — i.e.,
that the combined selling price equals the minimum price allowed by the Act, which, in a combination sale, is the "cost to the retailer . . . of the total of all articles, products, commodities, gifts, and concessions included in the transaction."
With that assumption in mind, I must conclude that this transaction does not violate the Act.
The conclusion stated above concerning the fact that the consumer actually pays less than the allowed minimum price also apply to this transaction.
I must emphasize (as was emphasized in Opinion No. 98-226) that the question of whether any particular transaction is in violation of the Unfair Cigarette Sales Act is largely a question of fact and will turn on the specifics of that transaction. It is for this reason that the conclusions I have reached in this opinion differ so radically from those reached in Opinion No. 99-098. The facts and assumptions that were provided by the requestor as a basis for that opinion were entirely different from the facts and assumption with which you provided me. The conclusions I have reached in this opinion were the result of the facts and assumptions that you provided. A different set of facts and assumptions is likely to produce different conclusions.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh
[1] Because you have asked me to assume that in the transaction in question, there is no intent to injure competitors or to destroy or lessen competition, it is my opinion that the provisions of A.C.A. §4-75-708(a) and (b) do not apply to this transaction. These provisions, by their terms, only apply in instances where such intent is present.